UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-128 (JRT/TNL)

UNITED STATES OF AMERICA,

                Plaintiff,

v.

PERCY LEE STROTHER Jr.,

                Defendant.

**GOVERNMENT'S POSITION REGARDING SENTENCING**

The United States of America, by and through its attorneys, Anders W. Folk, Acting United States Attorney for the District of Minnesota, and Bradley M. Endicott, Assistant United States Attorney, submits this Memorandum setting forth the government's sentencing position in the above-captioned case. Pursuant to the joint recommendation in the plea agreement, the United States recommends a sentence of 120 months' imprisonment.

### RELEVANT FACTS AND PROCEDURAL BACKGROUND

The defendant was originally charged as an Armed Career Criminal who possessed firearms on two separate occasions. *Indictment*, ECF No. 10. On October 12, 2018, Minneapolis Police Officers observed the defendant driving a vehicle that was reported stolen. Presentence Investigation Report ("PSR") ¶ 7. After stopping the defendant, officers lawfully inventoried the contents of the vehicle and recovered a loaded Beretta 9-millimeter pistol. Three months later, officers caught the defendant with another gun. On January 5, 2019, a Plymouth Police Officer stopped the defendant's vehicle for driving with his high beam lights while facing oncoming drivers. PSR ¶ 9. The officer observed

signs of chemical impairment from the defendant and requested assistance from a canine handler. The dog alerted next to the front headlight. *Id.* The canine handler searched under the hood and examined a loose fuse box next to the headlight. The officer opened the fuse box and found a Jennings .380 caliber handgun wrapped in a yellow towel. *Id.*

Hennepin County originally charged the defendant with being a felon in possession and he was held in confinement pending trial. Sometime in early March 2019, the defendant called his niece from jail. PSR ¶ 10. During that conversation, the defendant asked his niece if she ever had a felony. *Id.* After she said no, the defendant asked her to claim possession of the Jennings .380 caliber handgun and told her the following:

> If you're not a felon . . . you won't even get charged because they don't got nothing on you because they find it on me. You know what I'm saying? So what they do is verify it wasn't mine then it won't be a serious felony. But I was gonna say, if you could grab it, if you could say that, then I would just give you that car. You know what I'm saying? If you wanted to do that.

*Id.* The defendant also provided suggestions on how his niece could claim ownership of the gun. The defendant told her to say, "That's not my uncle Percy. That's mine. Or you could say something else like I got it from a friend." PSR ¶ 11. Minutes later, she told the defendant, "I will do that for you." A few days later, the niece provided an untruthful statement claiming ownership of the handgun. PSR ¶ 12.

Later, Minneapolis Police obtained a DNA warrant and submitted the Jennings .380 caliber firearm to BCA for forensic analysis. PSR ¶ 13. The major male DNA profile on the gun matches the defendant's DNA. *Id.*

On April 9, 2021, a one-count Information was filed charging the defendant with

Possession of a Stolen Firearm. ECF No. 74. The Information was filed with the understanding that the government would dismiss the Armed Career Criminal Indictment if the defendant agreed to enter a joint agreement recommending a 120-month sentence. On May 11, 2021, the defendant pled guilty to the Information and agreed to the 120-month recommendation. ECF Nos. 78-79. Sentencing is currently scheduled to take place on September 9, 2021.

## THE GOVERNMENT'S POSITION ON SENTENCING

In *Gall v. United States,* 552 U.S. 38 (2007), the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence. 552 U.S. at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors").

For the reasons stated below, the Government respectfully requests this Court to impose a 120-month sentence based on the joint agreement in the plea agreement, and all the facts and circumstances of this case under 18 U.S.C. § 3553(a), which requires consideration of: "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further

crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

*1. The Guidelines Range*

The U.S. Probation Office calculated a total offense level of 21 and criminal history category of VI for the defendant. PSR ¶ 115. The Base Offense Level is 20 because the defendant possessed the firearms after being convicted of a crime of violence, specifically Third Degree Assault – Substantial Bodily Harm. PSR ¶ 20. Probation also assessed a two-level increase for Obstruction of Justice because the defendant induced his niece to claim ownership of the gun. PSR ¶¶ 15, 25.

Although the guideline imprisonment range is 77 to 96 months, an upward variance to 120 months is warranted because 1) the parties jointly recommended a sentence of 120 months; and 2) the defendant would have been an Armed Career Criminal, subject to a 15-year mandatory minimum sentence, had the government not agreed to let the defendant plead to possessing a stolen firearm.

There should be no misapprehension that the defendant is an Armed Career Criminal. The defendant has four predicate violent felonies including, three convictions for Simple Robbery and one conviction for Third Degree Assault. PSR ¶¶ 37, 39, 40, and 61. *United States v. Pettis*, 888 F.3d 962, 965 (8th Cir. 2018) (holding that simple robbery in Minnesota is a predicate offense under the ACCA; "[Minnesota] state case law supports a finding that Minnesota simple robbery requires violent force and qualifies as a predicate offense under the ACCA."). In light of the above, the government asks the

Court to enforce the terms of the plea agreement.

2. *The Nature and Circumstances of the Offense*

The defendant, a career felon, possessed two different firearms in a short three-month period. It is clear the defendant was not deterred after the Minneapolis police seized the first firearm. After he was caught with the first gun, the defendant did not shy away from possessing another gun. If anything, the first gun seizure merely motivated the defendant to find a better hiding place for the second gun – the engine compartment. If that weren't enough, the defendant obstructed the administration of justice by having his niece falsely claim ownership of the gun.

All in all, the defendant went to great lengths to escape his criminal responsibility. He kept a second firearm in a place he thought would escape police detection. And he was willing to subject his own niece to possible perjury or obstruction charges in order to get away with his serious crime.

3. *The Criminal History of the Defendant*

The defendant's criminal history alone warrants a 120-month sentence. The defendant has accrued <u>four</u> violent felony convictions and served sentences between 18 months to 43 months each of those offenses. PSR ¶¶ 37, 39, 40, and 61. As such, the defendant would have been subject to the Armed Career Criminal penalties if he was convicted of the charges in the Indictment.

The Third Degree Assault conviction should give the Court serious pause. In 2011, the defendant assaulted female victim KP after a verbal altercation. PSR ¶ 61. According

to the complaint, the defendant punched KP in her face, head, and neck 10 to 15 times. *Id.* When the police arrived, the defendant was found with dried blood on his hands. *Id.* The victim KP suffered a right orbital bone fracture, a displaced sinus, facial cuts, and bruises. *Id.* Ultimately, the defendant was sentenced to 30 months imprisonment for the assault on KP. The defendant assault conviction coupled with the multiple robbery convictions well-establishes that he is violent and dangerous.

The PSR describes the defendant's contact with the criminal justice system beginning at age 17. PSR ¶ 37.  He has 17 felony conviction and has spent a significant portion of his adult life in prison. PSR ¶¶ 39-62.  The defendant's felony convictions and sentences include the following:

1. Simple Robbery, 1989 Hennepin County, 30 months' imprisonment;
2. Theft of a Motor Vehicle, 1989 Hennepin County, 13 months' imprisonment;
3. Simple Robbery, 1990 Hennepin County, 30 months' imprisonment;
4. Simple Robbery, 1992 Hennepin County, 43 months' imprisonment;
5. Vehicle Theft, 1995 Oakland California, 3 years' probation
6. First Degree Damage to Property, 1997 Hennepin County, 24 months' imprisonment stayed;
7. Possession of Stolen Vehicle, 1998 Las Vegas Nevada, 16 to 72 months' imprisonment;
8. Burglary, 2001 Las Vegas Nevada, 12 to 48 months imprisonment;
9. Theft of Property, 2006 Hennepin County, 19 months' imprisonment

10. Possession of Burglary Tools, 2006 Hennepin County, 23 months' imprisonment;

11. Check Forgery, 2006 Ramsey County, 15 months' imprisonment;

12. Theft of a Motor Vehicle, 2007 Hennepin County, 23 months' imprisonment;

13. Theft of a Motor Vehicle, 2008 Hennepin County, 20 months' imprisonment;

14. Third Degree Assault – Substantial Bodily Harm, 2011 Dakota County, 30 months' imprisonment; and

15. Third Degree Drug Possession, 2014 Hennepin County, 57 months' imprisonment.

The defendant's total criminal history score is 28, which is over twice the amount necessary to be a Category VI. PSR ¶ 67. At the time of the instant firearm possession, the defendant was under a criminal justice sentence for the 2014 Third Degree Drug Possession. PSR ¶ 66.

In sum, the defendant's criminal resume, recidivism, and possession of firearms necessitates the need for a serious sentence. The defendant has proven himself unwilling to correct his behavior despite the prior sentences, many of which were lenient. The past sentences have had no effect in curbing the defendant's criminal conduct. Given the defendants violent, lengthy, and regular criminal history, the Court should impose the jointly agreed 120-month sentence.

4. *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to*

*Promote Respect for the Law, to Provide Just Punishment for the Offense; to Protect the Community; and to Afford Adequate Deterrence to Criminal Conduct.*

All things considered, 120 months is the right number for the defendant. To promote respect for the law, there must be a true consequence for someone with this kind of recidivist history possessing two firearms in a span of three months, and brazenly obstructing justice. A 120-month sentence is also necessary to keep the community safe from the defendant's consistent criminal conduct. The defendant has proven that he can and will get his hands on guns despite the prior imposed sentences and law enforcement seizures.

Moreover, the pending federal case has not deterred the defendant from committing new acts of violence. Since the federal indictment, the defendant has been charged with two felony assault charges for assaulting one inmate in the Hennepin County Jail and another inmate in the Sherburne County Jail. PSR ¶¶ 85-86. Both assaults were unprovoked and both victims suffered lacerations and cuts. One victim required sutures above his eye.

There is also a need for individualized and general deterrence. Individualized deterrence is that which discourages a defendant from ever committing such a crime again. Unfortunately, as set forth above, previous criminal sentences and the resulting terms of supervision by courts have done little or nothing to deter the defendant from committing new, more serious crimes. The need for graduated sanctions is apparent.

A significant sentence is also important as a general deterrent. General deterrence is the public response necessary to deter others from committing similar crimes. "Congress specifically made general deterrence an appropriate consideration . . . and we have

described it as 'one of the key purposes of sentencing.'" *Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)). A long sentence in this case sends a message to other felons that they risk significant federal penalties if they continue to possess guns after repeated attempts by the criminal justice system to intervene and encourage law-abiding behavior.

To date, the defendant's prior convictions and sentences have failed to deter him from possessing firearms or committing new crimes– even when he was under court supervision. Significant here, the defendant was still on supervised release when he possessed the two guns. At a time when he was under the judicial microscope, the defendant should have been turning away from crime. As someone with 17 felony conviction, the defendant above all should have known that he was the last person who should possess guns.

Bottom line, anyone with such a serious criminal record should not escape a hefty sentence after committing new felony gun offenses. The defendant's criminal track record is undeniable. The defendant has not shown himself amenable to "turning things around" despite the prior sentences and chances given. The public deserves to be protected from the defendant getting another gun.

## CONCLUSION

For all the foregoing reasons, the United States respectfully recommends that the Court impose the jointly agreed 120-month sentence. On balance, such a sentence will serve the needs of sentencing to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect

the public from further crimes of the defendant.

Dated: August 25, 2021              Respectfully submitted,

                                                W. ANDERS FOLK
                                                Acting United States Attorney

                                                *s/ Bradley M. Endicott*

                                                BY: BRADLEY M. ENDICOTT
                                                Assistant U.S. Attorney